UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM XAVIER JEFFRIES,

                Petitioner,

v.

S. L. BURT,

                Respondent.

_____/

Case No. 1:20-cv-240

Hon. Janet T. Neff

## REPORT AND RECOMMENDATION

Malcolm Xavier Jeffries ("Jeffries" or "petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons discussed below, I recommend that the petition be denied.

### I.      Conviction, Appeals, and the Habeas Petition

### A.      Trial, conviction and sentence

Aurelias Marshall was convicted of murdering Joel Battaglia ("the victim") in front of 1065 Lake Drive in Grand Rapids, Michigan, on June 11, 1990.  *See People v. Aurelias Marshall*, No. 329362, 2017 WL 1337498 (Mich. App. April 11, 2017).  Although Aurelias' brother Acey Marshall told detectives that Aurelias hit Battaglia on the day of his death, no charges were filed against him.  *Id*. at *1.  The case was dormant for years.

> The investigation of Battaglia's death was reopened in 2014, and investigative subpoenas were used in the investigation to Acey and Sheila Reed, who lived in the downstairs apartment at 1060 Lake Drive in 1990.  Both testified pursuant to investigative subpoenas.  Then, after they were charged with perjury, Acey and Sheila gave statements that placed defendant on Lake Drive when Battaglia was killed.  Additional evidence was obtained from other individuals who testified that defendant told them that he had robbed and beaten a "white boy" in

Grand Rapids. Following deliberations, the jury convicted [Aurelias Marshall] of felony murder.

*Id*.

During the investigation of the murder, authorities issued a prosecutor's investigative subpoena to Jeffries, who was examined under oath on October 22, 2014. *See* Interview Trans. (ECF No. 28-1). Shortly thereafter, Jeffries was charged with perjury. The Michigan Court of Appeals stated the basic facts as follows:

In November 2014, the prosecution charged defendant [Jeffries] with knowingly making a false statement while under oath during an examination conducted under the authority of an investigative subpoena. More specifically, the prosecution alleged that, at an examination under oath held in October 2014, defendant had lied about his knowledge or communications regarding the beating death of Christopher Joel Battaglia in 1990.

At trial, the prosecution presented evidence that defendant had denied under oath that he had information about Battaglia's murder—whether from firsthand knowledge or through information provided by a third party. The prosecution also elicited testimony from four witnesses whose testimony, if believed, established that defendant either had knowledge of Battaglia's murder when he testified or told them that he did not testify truthfully when examined under oath. Indeed, there was testimony indicating that defendant directly participated in the assault on Battaglia. Defendant challenged the credibility of the witnesses at trial and testified that his statements under oath were accurate. The jury chose to believe the prosecution's witnesses and found defendant guilty of perjury.

*People v. Jeffries*, No. 330461, 2017 WL 2200616 at *1 (Mich. App. May 18, 2017). The jury convicted Jeffries of perjury pursuant to M.C.L. § 767A.9(1)(b), which provides that,

A person who makes a false statement under oath in an examination conducted under this chapter knowing the statement is false is guilty of perjury punishable as follows: . . . (b) If the false statement was made during the investigation of a crime punishable by imprisonment for life, by imprisonment for life or for any term of years.

*Id*. "The trial court sentenced [Jeffries] as a fourth-offense habitual offender, MCL 769.12, to serve 40 to 100 years in prison for his conviction." *Id*.

2

### B.    State court appeal

Jeffries, through appellate counsel, raised five claims on appeal:

I.  Must the conviction of perjury in a prosecutor's investigative subpoena be vacated when service of the subpoena was done immediately prior to questioning; defendant had no opportunity to consult with counsel; defendant was not free to leave; files had been lost or destroyed from the investigation of 20 years ago; and defendant was considered a suspect?

II.  Must defendant be granted a new trial because his waiver of counsel was not knowing, intelligent and voluntary as the trial court failed to comply with case law of MCR 6.005 resulting in defendant being denied his Sixth Amendment right to counsel?

III.  Was defendant denied his right to present a defense by the trial court's refusal to allow him to call witnesses?

IV.  Was defendant denied his constitution [sic] right to effective assistance of counsel when trial counsel's cumulative errors denied defendant a fair trial?

V.  Does due process require resentencing where the court departed above the sentencing guidelines range and the reasons given did not support the degree of departure?

*Jeffries*, No. 330461 (Appellate Brief) (ECF No. 21-16, PageID.1294-1296).

Jeffries also filed a *pro se* Standard 4 Brief raising eight issues (in his words):

I.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where there was a legitimate difference of opinion about the trial tactic that resulted in a complete breakdown in the attorney-client relationship and defendant asked for a substitute counsel and the trial court abused its discretion when it denied defendant's request which resulted in a fundamental miscarriage of justice, MCL 769.26?

II.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where defendant was denied the opportunity to have his appeal of right reviewed based upon a complete and accurate trial record for appellate review purposes where the 10/22/2014 investigative subpoena interview video was altered to depict the defendant receiving and acknowledging that he received an investigative subpoena to appear and several instances where the trial court record has deleted critical statements that was appealable issues which if not corrected will result in a fundamental miscarriage of justice MCL 769.26?

III.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the prosecution knowingly, willfully, and intelligently used Acey Marshall's perjured testimony that conflicted with the photograph autopsy evidence of Christopher Joel Battaglia, that was showed to defendant which depicted the victim with a hole clean through his forehead, to obtain a conviction which resulted in a fundamental miscarriage of justice, MCL 769.26?

IV.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the trial court abused its discretion when it denied defendant's directed verdict of acquittal where there was an insufficiency of the evidence because when looking at the evidence in light most favorable to the prosecution, the prosecution failed to prove that the defendant called Tammy Warning and told her that a guy named Panda told him that he knows who killed Mr. Battaglia?

V.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the prosecutor interjected issues broader than defendant's guilty [sic] or innocence where the defendantn [sic] was charged with perjury for allegedly calling his ex-girlfriend Tammy Warning and telling her that "Panda" told him that he knew who killed Christopher Joel Battaglia.  There was prosecutorial misconduct that resulted in the conviction of an actually innocent person, and a fundamental miscarriage of justice has taken place in this case where the plain errors affected the fairness, integrity or public reputation of the judicial proceedings MCL 769.26?

VI.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the prosecutor failed to product [sic] detectives Gatry Crum, Paul Warwick, and David Benison, who were all endorsed on the information as witnesses which deneid [sic] the defendant a fair trial where these detectives [sic] investigation into the death of Mr. Battaglia was heavily relied upon by the prosecution throughout the defendant's trial, which resulted in a fundamental miscarriage of justice, MCL 769.26?

VII.  Was defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the trial court abused its discretion when it denied defendant's motion for him to recuse himself [sic], where in this case all of his rulings were partial to the prosecution and against the defendant where his personal clerk was involved in the certification of defendant's 10/22/2014 video testimony transcript and video being falsified to depict defendant being served with a subpoena that he was never served with and the trial court also ruled that Acey Marshall could give

perjured testimony at the defendant's trial which pierced the veil of judicial impartiality?

VIII.  Defendant's [sic] state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where the prosecution knowingly, intentionally, and willfully, withheld exculpatory evidence in violation of Brady V Maryland, where the prosecution withheld from the defense the autopsy report and autopsy photos of Christopher Joel Battaglia which resulted in the conviction of an innocent person and a fundamental miscarriage of justice, MCL 769.26?

*Id*. (Standard 4 Brief) (ECF No. 21-17, PageID.1352-1359).

The Michigan Court of Appeals affirmed the conviction.  *Jeffries*, 2017 WL 2200616.  Jeffries filed a *pro se* application for leave to appeal to the Michigan Supreme Court, raising Standard 4 Brief Issues I, II, III, and VII (PageID.1759-1761) (ECF No. 21-20, PageID.1686, 1708-1711, 1719-1721, 1759-1761). Jeffries also raised two new issues:

New Issue I:   The defendant was denied his state and federal constitutional rights to effective assistance of appellate counsel and due process, US Const Ams VI and XIV; Const 1963, Art 1, § 20, where appellate counsel argued that the defendant was served with a subpoena against the defendant's wishes and the preserved claims in the trial court record that he had asserted that he was never served with the a subpoena and that the DVD and transcribed record of his oath testimony had been falsified to depict him being served with a subpoena.

(PageID.1770-1771).

New Issue II:  A defendant does have a right under state and federal due process, US Const Am XIV; Const 1963, Art 1, § 17, to a [sic] accurate certified record and did the trial court and court of appeals abuse its discretion by refusing to grant funds for an expert to authenticate the 10/22/2014, investigative subpoena testimony video.

(PageID.1793-1794).  The Michigan Supreme Court denied the application.  *People v. Malcolm Xavier Jeffries*, No. 156008 (Mich.) (ECF No. 21-20, PageID.1683) (Nov. 29, 2017).

## C.    Motion for relief from judgment ("MRJ")

After his unsuccessful appeal, Jeffries filed a *pro se* motion for relief from judgment ("MRJ") in the trial court pursuant to MCR 6.502.  The trial judge identified five issues:

5

I) the Chief Judge's denial of Defendant's appeal of his Motion to Disqualify this Court was an abuse of discretion;

II) Appellate Counsel was ineffective for failing to investigate or request funds for a forensic computer expert or raise the claim that the DVD was falsified;

III) newly discovered evidence exists and should have been raised by Appellate Counsel;

IV) this Court's ruling allowing Acey Marshall's testimony was clearly erroneous and an abuse of discretion; and

V) the Michigan Court of Appeals' decision to deny Defendant's motion for remand was clearly erroneous and an abuse of discretion.

Opinion and Order (Oct. 31, 2018) (ECF 21-21, PageID.2152).  The trial court denied the motion.

*Id*. at PageID.2149-2155.

Jeffries filed an application for leave to appeal to the Michigan Court of Appeals,

which raised the following issues:

I.  Did the trial court abuse its discretion where its decision was clearly erroneous when it denied defendant's motion for relief from judgment and erroneously ruled that defendant failed to establish "good cause" and "actual prejudice" for failing to raise his five claims on his first appeal of right?

II.  Does defendant Jeffries have a state and constitutional due process right to effective assistance of both trial and appellate counsel, and was appellate counsel ineffective for failing to use the trial court record to support and raise the "dead bang winners" and for forcing defendant to raise and argue the 5 unraised claims in pro per, in his motion for relief as "procedurally defaulted" claims?

III.  Was the trial court's decision not to address defendant's newly discovered Brady violation evidence claim in its 10/31/2018 opinion and order denying his motion for relief from judgment because he failed to establish entitlement to relief pursuant to MCR 6.508(D)(3), clearly erroneous and a [sic] abuse of discretion?

IV.  Was the trial court's 10/31/2018 opinion and order clearly erroneous in its findings of fact and its conclusions of law and did it abuse its discretion when it erroneously claim defendant's "Brady Violation" claim is "collateral" to issues being considered at his perjury trial because he was convicted of murder, or aiding in the murder, where the Court of Appeals stated in its decision on defendant Jeffries direct appeal that ". . . Defendant must have had knowledge of Battaglia's murder because he helped beat Battaglia["]?

6

V.  Did Judge Trusock abuse his discretion when he failed to adhere to the appearance of impropriety where he granted the prosecution's request to allow Acey Marshall to testify pursuant to MRE 404(B), where Judge Trusock had prior knowledge from presiding over Aurelias Marshall's murder trial from which Prosecutor Koncki was intentionally suppressing favorable information that was exculpatory, material and impeachment evidence that could have impeached Acey Marshall's testimony at his perjury trial that defendant Jeffries was present at the scene and helped beat Battaglia?

*People v. Malcolm Xavier Jeffries*, No. 347356 (Mich. App.) (application) (ECF No. 21-21, PageID.2020). The appellate court denied the delayed application "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." *Id*. (Order) (June 6, 2019) (ECF No. 21-21, PageID.2006).

Jeffries filed an application for leave to appeal to the Michigan Supreme Court raising the following issues:

I. Did the Michigan Court of Appeals abuse its discretion when it denied defendant's motion for miscellaneous relief requesting that it remand his case back to trial court for an evidentiary hearing so that he could have the opportunity to develop the record by getting an initial determination by the trial court for appellate consideration of his (A) newly discovered evidence; (B) Brady Violation; and (C) ineffective assistance of appellate and trial counsel claims?

II. Did the Michigan Court of Appeals abuse its discretion when it failed to adjudicate his clearly erroneous and abuse of discretion claim where the trial court denied defendant's motion for relief from judgment when it ruled that defendant failed to establish "good cause" and "actual prejudice" for failing to raise his five claims on his first appeal of right?

III. Did the Michigan Court of Appeals abuse its discretion when it failed to remand defendant's case back to the trial court for a evidentiary hearing could be held where the trial court could make a initial determination about whether or not his state and federal constitutional rights to effective assistance of both trial and appellate counsel was violated, where appellate counsel was ineffective for failing to use the trial court record to support and raise the "dead bang winners" on his direct appeal and for forcing defendant to raise and argue the five unraised claims, in pro per, in a motion for relief from judgment as "procedurally defaulted" claims?

IV. Did the Michigan Court of Appeals abuse its discretion and erred when it failed [sic] review the trial court's failure to address defendant's newly discovery Brady Violation claim?

V. Did the Michigan Court of Appeals abuse its discretion, in its 06/06/2019 order denying defendant's delayed application for leave to appeal "because defendant failed to establish that the trial court erred in denying the motion for relief from judgment["],  without remanding the case back to the trial court so that the record can be developed and a initial determination for appellate consideration can be made about whether or not (1) evidence was favorable to defendant; (2) the prosecution suppressed the evidence; & (3) the evidence was material and its suppression prejudicial?

VI. Was the Michigan Court of Appeals decision clearly wrong and will cause a material injustice to me and did it abuse its discretion when it failed to address the disqualification of the trial court Judge Mark A. Trusock, who abused his discretion when he failed to adhere to the appearance of impropriety when he granted the prosecution's request to allow Acey Marshall to testify pursuant to MRE 404(b), when Judge Trusock had prior knowledge from presiding over Aurelias Marshall's murder trial from which Prosecutor Koncki was intentionally suppressing favorable information that was exculpatory and impeachment evidence that would have impeached Acey Marshall's testimony at defendant Jeffries perjury trial that he was present at the scene and helped beat Battaglia?

*People v. Malcolm Xavier Jeffries*, No. 159905 (Mich.) (application for leave to appeal) (ECF No. 21-22, PageID.2176-2177).  The Michigan Supreme Court denied the application "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Id*. (Order) (Dec. 23, 2019) (ECF No. 21-22, PageID.2158).

### D.    Habeas Petition

This matter is now before the Court on Jeffries' 217-page petition and "supplement" seeking habeas review pursuant to 28 U.S.C. § 2254.  *See* Petition (ECF No. 1, PageID.1-39); Supplement (ECF Nos. 3 and 3-27, PageID.45-222).

Jeffries has raised ten issues[1]:

I.  Defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20,

---

[1] Jeffries did not number his claims sequentially.  He referred to the first five claims as "exhausted claims" 1 through 5 in his direct appeal, and the second five claims as "exhausted claims" 1 through 5 as raised in his MRJ.

where there was a legitimate difference of opinion about the trial tactic that resulted in a complete breakdown in the attorney/client relationship and defendant asked for a substitute counsel and the trial court abused its discretion when it denied defendant's request which resulted in a fundamental miscarriage of justice, MCL 769.26.

Petition at PageID.20.

II.  Defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, §§ 17 and 20, where defendant was denied the opportunity to have his appeal of right reviewed based upon a complete and accurate trial record for appellate review purposes where the 10/22/2014 investigative subpoena interview video was altered to depict the defendant receiving and acknowledging that he received an investigative subpoena to appear and several instances where the trial court record has deleted critical statements that was appealable issues which if not corrected will result in a fundamental miscarriage of justice MCL 769.26.

*Id*. at PageID.25.

III.  Defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, Sections 17 and 20, where the prosecution knowingly, willfully, and intelligently used Acey Marshall's perjured testimony that conflicted with the photograph autopsy evidence of Christopher Joel Battaglia, that was showed to defendant which depicted the victim with a hole clean through his forehead, to obtain a conviction which resulted in a fundamental miscarriage of justice, MCL 769.26.

*Id*. at PageID.26.

IV.  Defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, Sections 17 and 20, where the trial court abused its discretion when it denied defendant's motion for him to recuse himself, where in this case all of his rulings were partial to the prosecution and against the defendant where his personal clerk was involved in the certification of defendant's 10/22/2014 video testimony transcript and video being falsified to depict defendant being served with a subpoena that he was never served with and the trial court also ruled that Acey Marshall could give perjured testimony at the defendant's trial which pierced the veil of judicial impartiality?

*Id*. at PageID.27.

V.  Defendant's state and federal constitutional rights to due process, a fair trial, and counsel, violated, U.S. Const. Ams VI and XIV; Const. 1963, Art. 1, Sections 17 and 20, where the prosecution knowingly, intentionally, and willfully, withheld exculpatory evidence in violation of Brady V Maryland, where the prosecution

withheld from the defense the autopsy report and autopsy photos of Christopher Joel Battaglia which resulted in the conviction of an innocent person and a fundamental miscarriage of justice, MCL 769.26.

*Id*. at PageID.28.

VI.    Chief Judge ruling denying the appeal of the trial court's denial to recuse/disqualify itself, because the trial court had personal knowledge of the case pursuant to MCR 2.003(C)(1)(c), without considering MCR 2.003(C)(1)(a) & (b)(i) & (ii), was "clearly erroneous" and an "abuse of discretion" which resulted in a decision by the chief circuit court judge that was based upon an unreasonable determination of the facts in light of the evidence presented in the trial court.  See 28 USC Section 2254(D)(2); 28 USC Section 2254(e)(1).

*Id*. at PageID.29.

VII.    Appellate counsel's performance fell below an objective standard of reasonableness which violated the defendant's Sixth and Fourteenth Amendment rights to have his appeal of right adjudicated based upon the merits when he failed to investigate, consult with and/or request funds for a forensic computer expert, or raise the preserved in the trial court claim by the defendant that he "was not" served with a subpoena and the DVD was falsified to cover this "fact" up.

*Id*. at PageID.31.

VIII.    The newly discovered exculpatory and impeachment evidence was discovered by the defendant from a letter sent to him by his appellate counsel dated 05/08/2017, with a copy of the Michigan Court of Appeals, 04/11/2017, unpublished opinion from the *People v. Marshall*, #329362, which had appellate counsel read the opinion and would have mastered the record of his case and conducted any type of investigation of the facts involved with his case, he would have recognized and raised this newly discovered exculpatory and impeachment claim himself on direct appeal instead of forcing the defendant to raise this claim collaterally.

*Id*. at PageID.33.

IX.    The trial court's ruling under MRE 403 was "clearly erroneous" and an "abuse of discretion" where it ruled that the probative value of Acey Marshall's testimony outweighed the prejudicial effect of Acey Marshall's testimony, where the trial court was aware of the suppression of exculpatory and impeachment testimony evidence not being disclosed to the defendant but still granted the prosecution's MRE 404(b) request anyway.

*Id*. at PageID.34.

X.    The Michigan Court of Appeals' decision to deny defendant's motion for remand appealing the trial court's denial of his timely filed motion for a new trial and evidentiary hearing via the 09/21/2016 order was "clearly erroneous" and an "abuse of discretion" when it failed to review the trial court's 05/13/2016 order denying defendant's motion for a new trial and evidentiary hearing under the "abuse of discretion" standard of review which clearly violated defendant's right to the equal protection of the law under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and appellate counsel was ineffective for failing to file a motion for miscellaneous relief pursuant to MCR 7.216(A)(3).

*Id*. at PageID.35.

## II.    Standard of review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  In this regard, 28 U.S.C. § 2254 provides that,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under this statute, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

11

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381-82 (2000); *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694.  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer v. Warren*, 959 F.3d 704, 721 (2020).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). In addressing a petitioner's habeas claims, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *Sumner v. Mata*, 449 U.S. 539, 546-547 (1981).

Section 2254(d) limits the facts a court may consider on habeas review. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "[I]f the petitioner's claim was never adjudicated on the merits by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Id*.

### III.    Procedural default

Respondent contends that Jeffries procedurally defaulted Issues VI, IX, X, and part of III. *See* Answer (ECF No. 20, PageID.334). Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). However, federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved

complicated issues of state law.").  Jeffries' claims evolved as they progressed on appeal.  *See* §§ I.B. and C., *supra*.  Rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy dictates that the Court address the merits of Jeffries' claims.  *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (addressing the merits because "the cause-and-prejudice analysis adds nothing but complexity to the case").

IV.    **Discussion**

A.    **Issue I (Right to counsel)**

Jeffries contends that the trial judge violated his federal constitutional rights when he denied Jeffries' request for substitute counsel.  Both Jeffries and his appellate counsel raised issues related to his Sixth Amendment rights.  As discussed, Jeffries' *pro se* brief stated that the trial court abused its discretion when he asked for substitute counsel where there was a legitimate difference of opinion about the trial tactic that resulted in a complete breakdown in the attorney/client relationship.  Jeffries' appellate counsel raised a similar issue, arguing that the trial court erred when it allowed Jeffries to represent himself at trial and that his waiver of counsel was not knowing, intelligent and voluntary.  *See Jeffries*, 2017 WL 2200616 at *6.  The Michigan Court of Appeals denied Jeffries' *pro se* claim because it was "entirely without any merit."  *Id*. at *14.  In denying appellate counsel's issue, the Michigan Court of Appeals performed an exhaustive review of Jeffries' relationship with counsel and request for new counsel which is applicable to both claims:

> "The Sixth Amendment of the United States Constitution, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence.' " *People v. Kammeraad*, 307 Mich. App. 98, 122; 858 N.W.2d 490 (2014) (citation omitted; alteration and ellipsis in original). "The analogous provision of the Michigan Constitution provides that '[i]n every criminal prosecution, the accused shall have the right to ...

have the assistance of counsel for his or her defense [.]' " *Id.*, quoting Const. 1963, art. 1, § 20 (alterations and ellipsis in original).

"The right of self-representation is secured by both the Michigan Constitution, Const. 1963, art. 1, § 13, and by statute, MCL 763.1." *People v. Dunigan*, 299 Mich. App. 579, 587; 831 N.W.2d 243 (2013). "The right of self-representation is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *Id.* "[A]lthough the right to counsel and the right of self-representation are both fundamental constitutional rights, representation by counsel, as guarantor of a fair trial, 'is the standard, not the exception,' in the absence of a proper waiver." *Russell*, 471 Mich. at 189-190 (citations omitted). The *Russell* Court reviewed its earlier decision in *Anderson* and MCR 6.005(D), observing:

> In *People v. Anderson*, this Court applied the . . . standard for self-representation and established requirements regarding the judicial inquest necessary to effectuate a valid waiver and permit a defendant to represent himself. Upon a defendant's initial request to proceed pro se, a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.
>
> In addition, a trial court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:
>
> "The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer."
>
> In [*People v.*] *Adkins* [(*After Remand*)], [452 Mich. 702; 551 N.W.2d 108 (1996),] this Court clarified the scope of judicial inquiry required by *Anderson* and MCR 6.005(D) when confronted with an initial request for self-representation. *Adkins* rejected a "litany approach" in favor of a "substantial compliance" standard[.] [*Russell*, 471 Mich. at 190-191 (citations omitted).]

After he disagreed with his trial counsel over the propriety of challenging the authenticity of the video and transcript of his examination under oath, defendant asserted his right to represent himself through motions filed on his own behalf and orally at a hearing held in July 2015. At the July hearing, the trial court considered appointed counsel's argument that there had been a breakdown in his relationship with defendant that warranted the appointment of a new lawyer. Counsel stated that the breakdown was in part caused by his refusal to file motions related to defendant's claim that the transcript from his examination had been altered. Counsel expressed that he did not file the motions because he did not "see any factual basis" for doing so.

Defendant told the trial court that he also wanted a new lawyer because he had never given counsel permission to seek a competency examination. The court interrupted, "Well, quite frankly, sir, if he didn't file that motion, he would be ineffective . . . ." When defendant asked how that would amount to ineffective assistance, the court explained that defendant was not a lawyer and did not have a "clear understanding" of procedures or policies. Defendant responded that he did "have a clear understanding." The court then asked defendant several questions to see how well he understood criminal procedure and the rules of evidence. When defendant protested that he had a constitutional right to represent himself, the trial court explained the risks of proceeding without a lawyer:

> You're charged with perjury. That is a life or any term of years. And you're also charged with a—with a fourth felony supplement. You—you have a right to represent yourself. But I'm going to tell you right now. I've been doing this for 30 years. And probably seven or eight time[s], I have either sat as a judge over someone who has represented themselves, or like [counsel], been appointed to . . . sit there while—while the defendant represents himself. Every single time, there has been a conviction. Every single time, the jurors think[] it's a joke that you're representing yourself. I'm being straight forward with you here. Okay?

The trial court reminded defendant that he did not know the rules of evidence and warned him that the court was not "Judge Judy" or the "People's Court" and would hold him to the "exact same standard of understanding the legal theories and the rules of laws[ ] that I would an attorney." The court also expressed confidence in counsel's ability to defend defendant and told defendant that it was counsel's job to tell him "what the realities of the circumstances are." The court told defendant that he might not like the answers that counsel gave him, but it was better than having a lawyer who told him everything was wonderful only to "end up with life in prison and wonder what the heck [was] going on."

After warning defendant about the dangers of self-representation and the nature of the charge and possible penalty, the trial court stated that it saw "no reason

16

to dismiss" appointed counsel. It acknowledged that defendant had the right to represent himself and told him that he would have to make his selection right now. The court indicated that counsel would have to remain as stand-by counsel if defendant represented himself. It also warned defendant that if he disrupted the "court in any way, you will be sitting in lock up and he [counsel] will continue with the trial." The court and defendant then had the following short exchange:

> THE COURT: Now, after we've had our little discussion here, do you really wish to represent yourself?
>
> DEFENDANT: I'm forced to.
>
> THE COURT: No, I'm not asking you if you're forced. I'm asking you yes or no.
>
> DEFENDANT: Yes. I don't have a choice.
>
> THE COURT: All right. Then you're going to represent yourself. All right? And we're—and this hearing is done. Let's go.

As can be seen, defendant told the trial court that he felt compelled to represent himself because the court refused to appoint him a new lawyer. Although defendant had the right to the assistance of counsel at state expense, he did not have the right to the appointed counselor of his choice. *Russell*, 471 Mich. at 192-193 n 25.  And his insistence that the trial court should appoint him a different lawyer did not alter the fact that he stated that he preferred to represent himself rather than have current counsel represent him. Thus, this case is not like that in *Russell* where the defendant insisted that the trial court appoint substitute counsel, but nevertheless also insisted that he did not want to represent himself.  *Russell*, 471 Mich. at 192-193. Examining his comments as a whole and in light of his written motions to represent himself, defendant unequivocally asserted that he preferred to represent himself rather than proceed with the lawyer appointed to represent him. *Anderson*, 398 Mich. at 367.

The trial court also properly ensured that defendant's decision was knowingly, intelligently, and voluntarily made at the hearing. The court plainly made him "aware of the dangers and disadvantages of self-representation." *Id*. at 368. It emphasized that defendant did not have the requisite skill and training to conduct a trial and warned him that in 30 years every defendant who had tried to represent himself had been convicted. The trial court even warned that the jurors in those cases had thought that the defendant's decision to represent himself was a "joke." Moreover, defendant demonstrated that he had the ability to raise issues before the court by motion and asserted that he had a clear understanding of the procedures and policies that would apply. He was also undaunted by the trial court's admonishment that it would hold defendant to the same standards that it would any lawyer appearing before the court. Taken together, these factors demonstrate that

defendant's assertion of his right to self-representation was knowingly, intelligently, and voluntarily made. *Id*. at 370-371.

The trial court did not make a specific finding whether defendant's assertion of his right to represent himself would disrupt the proceedings, but it did address the potential for disruption. Specifically, the court told defendant that it would lock him up and have counsel finish the trial if he disrupted the proceedings. The trial court adequately addressed all three factors discussed in *Anderson*.

The trial court also addressed the factors required under MCR 6.005(D). Contrary to defendant's assertion on appeal, the trial court specifically warned him that he was facing a perjury charge and could be sentenced to life in prison. Defendant also had been able to consult with counsel, and the court retained counsel as stand-by counsel. Defendant even used counsel to argue motions for him at trial, and later asked the court to allow counsel to complete the trial. The trial court additionally asked defendant if he wished to continue to represent himself before proceeding on the first and second days of trial, and it ordered counsel to represent defendant after defendant decided that he no longer wanted to represent himself. See MCR 6.005(E). Accordingly, the trial court complied with the requirements of both MCR 6.005(D) and MCR 6.005(E). Reversal is unwarranted.

*Jeffries*, 2017 WL 2200616 at *6-8.

Jeffries' claim arises from the Sixth Amendment's guarantee that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

At the same time that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation," it does not give "impecunious defendants . . . a Sixth Amendment right to choose their counsel." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). The Sixth Amendment thus does not demand that courts grant an indigent defendant's request for one free attorney after another, and the court may require the defendant to choose between maintaining current counsel or proceeding *pro se*. *United States v. Green*, 388 F.3d 918, 921-22 (6th Cir.2004)

*United States v. Pittman*, 816 F.3d 419, 425 (6th Cir. 2016).

In reviewing motions for substitution of counsel, the Court considers such factors as: "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if

18

any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012).  "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion."  *Id*. at 663-64.

Here, the Michigan Court of Appeals set forth a detailed discussion of the factors related to Jeffries' conflicts with his appointed counsel and the trial court's resolution of those conflicts.  This record reflects that the state court did not violate the Sixth Amendment with respect to Jeffries' request for new counsel and his request to represent himself. Ultimately, the state court reached the point which required Jeffries "to choose between maintaining current counsel or proceeding *pro se*." *See Green*, 388 F.3d at 921-22.  While Jeffries chose to represent himself, the Court also appointed stand-by counsel.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

**B.      Issues II (objection to subpoena)**

In Issue II, Jeffries contends that the prosecutors denied his constitutional rights to due process and counsel under the Sixth and Fourteenth Amendments by denying him an appeal based upon a complete and accurate trial record.   Jeffries contends that the October 22, 2014 investigative subpoena interview video was altered to depict him receiving and acknowledging receipt of the investigative subpoena.  As discussed in § IV.A., Jeffries' claim led to a disagreement with his counsel, *i.e.*, counsel refused to file motions related to Jeffries' unsubstantiated claim that the transcript had been altered.  The Michigan Court of Appeals rejected Jeffries' claim that "his

19

conviction must be vacated because he was not served with the subpoena," finding that the claim was "entirely without any merit. *Jeffries*, 2017 WL 2200616 at *14.

Jeffries raised the claim again in his MRJ.  At that time, the state court summarized Jeffries' claim in addressing his *pro se* motions "to receive funds to hire an investigator and forensic computer specialist" and to expand the record, as well as a related claim of ineffective assistance of appellate counsel (raised in habeas Issue VII):

> Defendant alleges that the prosecutor failed to serve Defendant with the subpoena prior to placing him under oath. To support this allegation, Defendant states that the Court Reporter assigned to this Court's courtroom altered and/or excluded video from the courtroom to make it appear that Defendant was served with the subpoena. Defendant requests funds to hire a "forensic computer specialist expert" to determine why only one of the three cameras in the courtroom was displayed on the DVD. . . .

> Defendant brings a Motion to Expand the Record to add exculpatory and impeachment evidence that Defendant alleges was not provided to him at trial. Defendant also wishes to add a frame by frame photographic recording of "the entire and complete visually recorded DVD of the defendant Jeffries 10/22/2014, Investigative Subpoena interview" so that he can establish that the DVD was falsified. . . .

Opinion and Order at PageID.2150-2151.

The trial court continued:

> The crux of Defendant's multiple motions and appeals is that Defendant was not properly served with a subpoena prior to the commencing of the investigative subpoena questioning that led to the perjury conviction. Defendant alleges that the video depicting him as being served with the subpoena, which was entered as evidence at trial, was falsified by this Court's judicial staff. Like many of Defendant's claims, this allegation has evolved over time. Defendant now asserts not that the video itself was edited, but that the other camera angles were excluded and these alternative views would show that Defendant was not properly served.

> As a general note, the cameras located in this Court's courtroom do not overlap. The courtroom contains four cameras which cover the witness stand, defense's table, plaintiff's table, and the Judge's bench. The video feed does not record all cameras simultaneously, instead the recording captures the camera feed based on microphone noise. Often, the camera feed is fixed in place during investigative subpoenas to record video of only the witness.

Defendant's claims of ineffective assistance of counsel revolve around Defendant's requests for Appellate Counsel to raise the issue of the edited video and transcript. Defendant states that Appellate Counsel should have hired an expert and followed up on the motions filed by Defendant at trial. Without addressing Defendant's current claims on the merits, this Court notes that the issue of edited video and transcripts has been addressed *ad nauseam* at all levels of Michigan Courts. Appellate Counsel made legal arguments related to proper service in the appellate brief and Appellate Counsel assisted Defendant in filing a Standard 4 Brief. . . .

In all claims, Defendant is unable to establish that Appellate Counsel fell below an objective standard of reasonableness or that the results of the proceedings would have been different. Defendant is unable to establish good cause for his failure to raise these issues on appeal.

*Id*. at PageID.2154

In short, Jeffries seeks to have his conviction thrown out because he was not served with the subpoena prior to testifying.  Jeffries presents no evidence to support his evolving claim that the video was edited to depict him receiving the subpoena, that the video was falsified by courtroom staff, or that the relevant angles of the courtroom cameras were excluded. During the course of the habeas proceedings, respondents filed a transcript of Jeffries' investigative subpoena testimony.  *See* Interview Trans. (Oct. 22, 2014) (ECF No. 28-1).  The transcript reflects that Jeffries received an investigative subpoena at the examination, was sworn as a witness, and then testified under oath for about 1½ hours regarding the June 11, 1990 murder.  *Id*. at PageID.2379-2459.  The transcript was certified by the court reporter.  *Id*. at PageID.2459.  There is no evidence to support Jeffries' claim that someone altered the video of his testimony to hide the fact that he was not served with a subpoena.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court;

nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

### C.    Issue III (perjured testimony of Acey Marshall)

In this claim, Jeffries contends that the prosecution violated his constitutional rights when it knowingly used Acey Marshall's perjured testimony that conflicted with an autopsy photograph of the victim, which was shown to Jeffires, which depicted that "the victim with a hole clean through his forehead."  The Michigan Court of Appeals rejected Jeffries's claim that the prosecutor "elicited false testimony" as "entirely without any merit. *Jeffries*, 2017 WL 2200616 at *14.

As discussed, Acey Marshall provided evidence used to convict his brother of murdering Mr. Battaglia.  At Jeffries' trial, Acey Marshall gave testimony which placed Jeffries as present at the scene of the murder:

Q      What did you see during the assault? What did you see happen and what did - - who did what?

A      They were both just punching him.

Q      Who's both?

A      Malcolm Jeffries and Aurelias Marshall.

Q      Did the man fight back?

A      He tried.

Q      Did he get any punches off to these two people?

A      No.

Q      Did he end up on the ground?

A      Yes

Q      What were you doing?

A      Just standing there looking. Just around.

Trial Trans. (ECF No. 21-8, PageID.694).

On cross-examination, Acey Marshall testified about his previous lies told to authorities about the murder, *e.g.*, that he was present at the murder. *Id*. at PageID.723. After he was offered a deal if he testified truthfully, Acey Marshall "made a statement that Mr. Jeffries had shot the victim" which was also a lie. *Id*. at PageID.724. Ultimately, Acey Marshall acknowledged that he "gave a statement that the victim was beat to death by [his] brother and Mr. Jeffries." *Id*. at PageID.726

Jeffries contends that the prosecutor violated his constitutional rights by knowingly using Acey Marshall's perjured testimony at his trial. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "In *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), we said, '(t)he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.'" *Id*. (quoting *Napue*, 360 U.S. at 269).

The basis for Jeffries' habeas claim is that Acey Marshall's testimony that Jeffries and Aurelias Marshall beat the victim to death was false, because it conflicted with an autopsy photograph which, according to Jeffries, depicted the victim "with a hole clean through his forehead."   Jeffries references this photograph in his "facts" supporting another habeas claim,

> Acey Marshall's testimony at my perjury trial claiming that he witnessed Battaglia's beating and that no weapons were involved goes against the autopsy photograph shown to me by detective Needham at my 10/22/2014 investigative subpoena interview. The photograph of Battaglia, depicted a injury on his forehead that makes it obvious to anybody looking at it that some type of weapon was used to cause a perfect hole clean through his forehead.

Petition at PageID.28.

Jeffries' claim is without merit.  First, there is no factual basis for Jeffries' claim that the prosecutor knew Acey's testimony was perjured because the victim had a "hole clean through his forehead," suggesting that the assailant used a weapon rather than being beaten to death.  Contrary Jeffries' claim, at Aurelias Marshall's trial, the pathologist testified that the victim had a skull fracture due to a blow to the *back* of his head:

> Dr. Stephen Cohle, a forensic pathologist, testified that Battaglia was hit at least five times in the face and at least one time in the back of the head. The blow to the back of Battaglia's head caused a depressed skull fracture, and Dr. Cohle opined that the force necessary to create the fracture was that of a full-grown person swinging a baseball bat, or a similar item, very hard.

*Marshall*, 2017 WL 1337498 at *2.

Second, the prosecutor did not attempt to deceive either the court or the jurors by having Acey Marshall testify about his previous statements that Aurelias Marshall and Jeffries beat the victim to death.  It was clear that Acey Marshall previously lied about the murder.  The prosecutor acknowledged this in closing argument, pointing out that Acey Marshall's testimony was used to explain why the government wanted to interview Jeffries about the murder:

> What other evidence do we have that he [Jeffries] lied under oath? That he made false - - that he made false statements denying that he ever had communications. That's what he did in the investigative subpoena. He admitted it. Right. He said, yes, I took an oath. And yes, I said I never talked to anyone about this, and I've never communicated with anyone about this, because I know nothing about this. Right? That's the gist of what he said under oath in the investigative subpoena. Those are the lies.
>
> The other evidence we have that he lied . . . I just want to talk to you about it.
>
> The evidence we have the defendant had information or knowledge about this investigation or case, and that he communicated to others that he did, are these people. Right? Acey Marshall. Tammy Warning. Clifton Cannon and Valma Nall or Tims. All right? We only hear about Malcolm Jeffries initially in 1990 because of Acey Marshall. I will tell you this right now. If we could have built a case back

24

in 1990 based on Acey Marshall, we would have. But we didn't, did we? The case went cold. And you can see why. Does Acey have reasons to lie? Absolutely. But we're not here on the murder.

We bring Acey Marshall in here to tell you this is how we got Malcolm's name. This is what he alleges Malcolm knew. That he's there and knows about it. That he's involved.

*But you don't have to believe a word Acey Marshall says to find the defendant guilty in this case of perjury. You don't. And if some of you are not sure you believe him, that he stood there - - the defendant - - and assisting in beating this man to death, you don't have to make that decision.*

Trial Trans. (ECF No. 21-8, PageID.805) (emphasis added).  In summary, there is no factual or legal basis for Jeffries' claim that the prosecutor violated his constitutional rights by knowingly presenting the perjured testimony of Acey Marshall.

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

## D.    Issue IV (Trial judge was biased and failed to recuse himself)

The Michigan Court of Appeals rejected denied Jeffries' claim "that the trial court should have granted his motion to recuse itself because the court was biased against him" as entirely without any merit. *Jeffries*, 2017 WL 2200616 at *14.  Jeffries' claim that the trial judge failed to recuse himself is a matter of state law which is not cognizable in federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."). Accordingly, this claim for habeas relief should be denied.

25

E.        Issue V (*Brady* violation)

Jeffries contends that the prosecutor intentionally withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), specifically the autopsy report and photographs of the murder victim. Jeffries contends that the report and photographs were relevant to show that Acey Marshall lied about the fact that the victim was beaten to death, because Jeffries saw an autopsy photograph of the victim with "a perfect hole clean through his forehead." Petition at PageID.28. Jeffries also became aware of Dr. Cohle's testimony "that a weapon of some sort was used to cause a significant impression on the back of Battaglia's head" because it was recited in the Michigan Court of Appeals decision affirming Aurelias Marshall's conviction. *Id*. Jeffries contends that the prosecution withheld all of this evidence which demonstrated that "the prosecutor knew that Acey Marshall [sic] testimony false about no weapon being used and she failed to correct Acey Marshall's perjured testimony that no weapon was used in the attack on Battaglia." *Id*. The Michigan Court of Appeals denied Jeffries' claim that the prosecutor "failed to turn over the autopsy report and photos from the investigation into Battaglia's death" as entirely without merit. *Jeffries*, 2017 WL 2200616 at *14.

To establish a *Brady* violation, a habeas petitioner must establish three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A habeas petitioner demonstrates prejudice by showing that the suppressed evidence is "material" *Id*. at 282. "[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Smith v. Cain*, 565 U.S. 73, 75 (2012) (internal quotation marks omitted).

Jeffries' *Brady* claim is without merit.   Jeffries was charged with perjury, not murder.  The issue at trial was whether Jeffries made a false statement under oath.  *See* M.C.L. § 767A.9(1)(b).  As discussed in § IV.C., *supra*, the prosecutor presented Acey Marshall's testimony to show the jury why the authorities were interested in interviewing Jeffries about the murder. Acey Marshall's veracity was not at issue.  As the prosecutor told the jury in closing argument, "you don't have to believe a word Acey Marshall says to find the defendant guilty in this case of perjury."  Jeffries has not demonstrated that he was prejudiced by the government's action. Whether the victim died from a beating or a skull fracture on the back of his head by a baseball bat was not material to the government's perjury case against Jeffries.  In summary, Jeffries has not demonstrated that there is a reasonable probability that the proceeding would have been different if he had the victim's autopsy report.[2]

The Michigan Court of Appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).  Accordingly, this claim for habeas relief should be denied.

### F.    Issue VI (Chief Judge refused to disqualify himself)

In this claim, Jeffries contends that the Chief Judge should have recused himself pursuant to MCR 2.003(C)(1) rather than denying the appeal of the trial court's denial of Jeffries' motion for the trial judge to recuse himself.  Jeffries' claim that the Chief Judge violated state laws in allegedly failing to comply with MCR 2.003(C)(1) is a matter of state law which does not raise a cognizable habeas claim.  An error in the application of state law is not cognizable in federal habeas review.  *See Estelle*, 502 U.S. at 67-68; *Pulley*, 465 U.S. at 41. "Whether or not the

---

[2] In this regard, the Court notes that the government did not withhold the autopsy photograph.  Jeffries acknowledged that he received the photograph during his investigative subpoena interview. *See* Petition at PageID.28.

Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief." *Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006). Accordingly, this claim for habeas relief should be denied.

### G.    Issues VII and VIII (ineffective assistance of appellate counsel)

### 1.    Legal standard

In Issues VII and VIII, Jeffries contends that his appellate counsel was ineffective for failing to raise two claims. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. With respect to the first prong, appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), citing *Strickland*. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745 (1983). "[I]t

is not deficient performance to leave some colorable issues out; indeed, it may even be the best

type of performance." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015).

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.   It is well-recognized that the effect of adding weak arguments to an

appellate brief "will be to dilute the force of the stronger ones." *Id*. at 752, quoting R. Stern,

Appellate Practice in the United States 266 (1981).  "[I]f you cannot win on a few major points,

the others are not likely to help, and to attempt to deal with a great many in the limited number of

pages allowed for briefs will mean that none may receive adequate attention." *Id*.  The strategic

and tactical choices to determine which issues to pursue on appeal are "properly left to the sound

professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990).

> Second, the defendant must show that counsel's deficient performance prejudiced

the defense, *i.e.*, "that counsel's errors were so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  The appropriate test is whether "there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id*.  at 694.  In making this determination, the court "must judge the

reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

the time of counsel's conduct." *Id.* at 690.

### 2.        Issue VII (falsified video)

> Jeffries contends that his appellate counsel was ineffective for failing to address the

government's actions in creating a falsified video which depicted him being served with the

subpoena.  For the reasons discussed in § IV.B., *supra*, Jeffries claim was meritless.   There was

no basis for counsel to raise Jeffries' evolving claim that the government, including courtroom

29

staff, went through extensive efforts falsify the video to cover up the fact that he was not served with a subpoena.  Counsel cannot be ineffective for failing to raise a meritless argument.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"). Accordingly, this claim for habeas relief should be denied.[3]

### 3.    Issue VIII (newly discovered evidence)

Jeffries contends that his appellate counsel failed to investigate newly discovered exculpatory and impeachment evidence which appeared in the appellate court decision of *People v. Aurelias Marshall*, 2017 WL 1337498.  Jeffries contends that appellate counsel knew that Acey Marshall claimed to have witnessed Aurelias Marshall and Jeffries murder the victim, and that from reading the appellate court opinion knew that Sheila Reed, Guadalupe Harwood and Dr. Stephen Cohle all gave testimony at the murder trial that would have impeached Acey Marshall's testimony "that placed me at the scene helping his brother Aurelias beat Battaglia."  Petition at PageID.33.  However, appellate counsel failed to investigate this new evidence.

In rejecting this claim raised in Jeffries' MRJ, the trial court stated,

> Defendant also alleges that Appellate Counsel was ineffective for failing to file claims and motions related to exculpatory evidence that Defendant alleges was withheld from him at trial. Specifically, information related to witnesses' testimony given at a trial which occurred prior to Defendant's trial. Based on the information provided by Defendant, this testimony was about specifics of the murder collaterally at issue in Defendant's case. Defendant was not convicted of this murder or aiding in this murder, but of lying about having knowledge of the murder while under oath. Defendant has not established that this information, which was publicly available via court records, should have been addressed in Appellate Counsel's brief. Additionally, as noted, Appellate Counsel assisted Defendant in filing a Standard 4 Brief, which could have included this claim.

---

[3] In this regard, the Court notes that appellate counsel raised issues regarding the subpoena, *e.g.*, "that the prosecutor acted contrary to the statutes authorizing investigative subpoenas by presenting [Jeffries] with the subpoena and then immediately examining him under oath without any advance notice and without allowing him an opportunity to consult with a lawyer."  *See Jeffries*, 2017 WL 2200616 at *1.

Opinion and Order at PageID.2154.

The state court reached the appropriate result. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  For example, counsel has a duty to investigate all witnesses who may have information concerning his client's guilt or innocence.  *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  Here, Jeffries' appellate counsel was not deficient for failing to investigate this "new evidence" or raising this issue on appeal. As discussed, while Acey Marshall made a number of inconsistent statements about the murder, the prosecutor presented his testimony to explain why the authorities wanted to interview Jeffries.  Appellate counsel was responsible for appealing Jeffries' conviction for perjury. Investigating witnesses to impeach Acey Marshall's testimony related to the actual murder and raising such matters would only detract from counsel's ability to address the relevant claims on appeal.  In the absence of an error by appellate counsel, there is no prejudice.  Accordingly, this habeas issue should be denied.

### H.    Issue IX (Acey Marshall's testimony should have been excluded)

Jeffries contends that the trial court's ruling under MRE 403 was "clearly erroneous" and an "abuse of discretion" when it ruled that the probative value of Acey Marshall's testimony outweighed the prejudicial effect of the testimony and allowed 404(b) testimony. Jeffries seeks relief for alleged errors of state law.  Petition at PageID.34.  An error in the application of state law is not cognizable in federal habeas review.  *See Estelle*, 502 U.S. at 67-68; *Pulley*, 465 U.S. at 41. Accordingly, this habeas issue should be denied.

### I.    Issue X (Denial of motion for remand)

Jeffries contends that the Michigan Court of Appeals' denial of his motion for remand under MCR 7.216(A)(3) was "clearly erroneous" and an "abuse of discretion".  Petition at

PageID.35.  MCR 7.216(A)(3) provides that, "The Court of Appeals may, at any time . . . in its discretion, and on the terms it deems just: . . .(3) permit amendment or additions to the grounds for appeal[.]".  Jeffries' claim that the appellate court made a discretionary decision to deny one of his motions is an alleged error in the application of state law which is not cognizable in federal habeas review. *Estelle*, 502 U.S. at 67-68; *Hayes*, 193 Fed. Appx. 577, 584 (6th Cir. 2006) ("Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief").

Jeffries' claim that denial of the motion was a violation of due process under the Fourteenth Amendment is without merit. A reference to "due process" does not transform an alleged error of state law into a federal constitutional error.  As the Supreme Court stated,

> We have long recognized that a "mere error of state law" is not a denial of due process. *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948). If the contrary were true, then "every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question." *Ibid. See also Beck v. Washington*, 369 U.S. 541, 554-555, 82 S.Ct. 955, 962-963, 8 L.Ed.2d 98 (1962); *Bishop v. Mazurkiewicz*, 634 F.2d 724, 726 (CA3 1980); *United States ex rel. Burnett v. Illinois*, 619 F.2d 668, 670-671 (CA7 1980).

*Engle v. Isaac*, 456 U.S. 107, 121 at fn 21 (1982).

Finally, Jeffries contends that appellate counsel was ineffective for failing to file a motion pursuant to MCR 7.216(A)(3).  Jeffries does not develop this argument, making only the bald assertion that "Mr. Ambrose knew that as my appellate counsel he had a duty to help me perfect my claim on my appeal of right/direct appeal which Mr. Ambrose failed to do at every phase of my appellate process." Petition at PageID.35.  Conclusory claims of ineffective assistance of counsel do not justify federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).  Accordingly, this habeas issue should be denied.

## V.    Recommendation

For these reasons, I respectfully recommend that the habeas petition be **DENIED**.

Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  February 17, 2023                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).